```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
WILLIAM S. GRAY, AUTO PARTNERS, LLC,
SUNRISE AUTOMOTIVE, LLC d/b/a
SUNRISE TOYOTA & SUNRISE SCION,

                Plaintiffs,

     -against-                           MEMORANDUM AND ORDER
                                         10-CV-3081 (JS)(ETB)
TOYOTA MOTOR SALES, U.S.A., INC.,

                Defendant.
-------------------------------------X
```

APPEARANCES:
For Plaintiffs:     David A. Rosenfeld, Esq.
                    Joseph Russello, Esq.
                    Samuel H. Rudman, Esq.
                    Robbins Geller Rudman & Dowd, LLP
                    58 South Service Road, Suite 200
                    Melville, NY 11747

                    Jonathan Paul Whitcomb, Esq.
                    Diserio Martin O'Connor & Castiglioni LLP
                    One Atlantic Street, 8th Floor
                    Stamford, CT 06901

                    Scott M. Harrington, Esq.
                    Diserio, Martin, O'Conner & Castiglioni LLP
                    50 Main Street, Suite 1000
                    White Plains, NY 10606

For Defendant:      Carl J. Chiappa, Esq.
                    Nathaniel Scott Boyer, Esq.
                    Hogan & Hartson
                    875 Third Avenue
                    New York, NY 10022

SEYBERT, District Judge:

Plaintiffs William S. Gray ("Gray"), Auto Partners, LLC ("Auto Partners") and Sunrise Automotive, LLC ("Sunrise" and, collectively, "Plaintiffs") sued Toyota Motor Sales, USA,

Inc. ("Defendant") and Toyota Motor Corp ("TMC"). Plaintiffs assert several state law claims, as well as claims under New York's Franchised Motor Vehicle Dealer Act (the "Dealer Act") and the federal Dealers' Day in Court Act, 15 U.S.C. 1221 et seq. (the "Day in Court Act"). Plaintiffs voluntarily dismissed their claims against TMC. Pending before the Court is Defendant's motion to dismiss. For the following reasons, that motion is granted and Plaintiffs shall file an Amended Complaint, if at all, within thirty days of this Order.

BACKGROUND

Sunrise is a franchised Toyota Dealer located in Oakdale, New York. (Compl. ¶ 4.) Pursuant to a Dealer Agreement between Sunrise and Defendant (the "Dealer Agreement"), Sunrise is operated by Auto Partners, a limited liability company managed by Gray. (Id. ¶ 16.) Plaintiffs do not elaborate on the ownership structure between Plaintiffs in the Complaint, but they assert in their motion papers that Auto Partners owned 99% of Sunrise and Gray owned the remaining 1%. Gray, in turn, also owned 95% of Auto Partners. (Pls. Opp. 16.)

Among other provisions, the Dealer Agreement contains a clause that prohibits Sunrise from transferring ownership without Defendant's written consent. (Chiappa

Declaration, Ex. 1, Dealer Agreement Sec. VI.)[1] Such consent, the contract states, shall not be unreasonably withheld. (Id.) The Dealer Agreement illustrates some of the factors that would constitute reasonable reasons for the Defendant to withhold its consent:

> DEALER agrees that factors which would make DISTRIBUTOR'S withholding of consent reasonable would include, without limitation, the failure of a new Owner or General Manager to meet DISTRIBUTOR'S standards with regard to financial capability, experience and success in the automobile dealership business.

(Id.)

In 2006, Plaintiffs attempted to sell the Sunrise franchise to Group 1 Automotive, Inc. ("Group 1"). In October, Gray entered into a nonbinding letter of intent with Group 1, pursuant to which Group 1 agreed to purchase Sunrise for: (i) the net value of Sunrise's assets; (ii) $17 million for Sunrise's goodwill; and (iii) the lesser of $15 million or the appraised value of the buildings and land on which Sunrise operated. In furtherance of the proposed sale, Group 1 (which already operated two Toyota dealerships) requested Defendant's consent to consummate the sale, but the Defendant refused,

---

[1] The Court may consider the Dealer Agreement on a motion to dismiss because the agreement is integral to Plaintiffs' Complaint and there is no dispute regarding its authenticity. See Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

3

citing Group 1's unsatisfactory "consumer satisfaction index" ("CSI") score. As a result of Defendant's refusal, the Group 1 deal fell through. (Compl. ¶¶ 18-20.)

Plaintiffs maintain that the CSI score was merely a pretext for Defendant's refusal, but they do not elaborate on a possible ulterior motive. (Id. ¶ 21.)

In January 2007, Plaintiffs explored a second proposal to sell Sunrise, this time to Don Lia ("Lia"). In February, Gray, on behalf of Sunrise, entered into an Asset Purchase Agreement with Lia by which Lia agreed to purchase Sunrise's customer and service files, its goodwill and its trade name for approximately $16 million. Also in February, Gray, on behalf of Auto Partners, entered into an Agreement to Sell and Purchase with Lia, by which Lia agreed to buy the land and buildings for $15 million. (Id. ¶¶ 23-27.)

On or about May 4, 2007, Lia sought Defendant's consent for the proposed sale. Defendant did not respond within sixty days, and Gray's counsel reiterated the request for consent on July 11, 2007. Defendant never formally responded to either request, but a representative of Defendant "advised Lia that he should withdraw his application on the basis of an unsatisfactory CSI rating." (Id. ¶¶ 29-30.) As a result, on July 24, 2007, Gray sent Lia a letter terminating the proposed

4

sale. (Id. ¶ 32)

A year later, Plaintiffs tried to sell Sunrise a third time. In May 2008, Gray, on behalf of Sunrise, entered into an Asset Purchase Agreement with an affiliate of Len Stoler, Inc. ("LSI"). LSI was able to obtain Defendant's consent to the proposed transfer, and it bought Sunrise for $24,250,000. (Id. ¶¶ 34-37.)

Plaintiffs thereafter commenced this suit, asserting essentially that Defendant unreasonably withheld its consent to the Group 1 and Lia sales and that this forced Plaintiffs to sell Sunrise to LSI for less than what Group 1 was willing to pay. They also claim that they are entitled to recover approximately $500,000 in brokers' commissions they incurred as a result of their multiple attempts to sell the dealership. (Id. ¶ 38.)

DISCUSSION

Plaintiffs assert eight claims: (1) breach of the Dealer Agreement; (2) breach of the implied covenant of good faith and fair dealing; (3) tortious interference with contract; (4) tortuous interference with a prospective economic advantage; (5) negligence; (6) fraud; (7) violation of the Dealer Act; and (8) violation of the Day in Court Act. For the reasons that follow, Defendant's motion to dismiss is granted. Plaintiffs

5

may file an Amended Complaint in accordance with the discussion below.

I. <u>The Motion to Dismiss</u>

To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). The complaint does not need "detailed factual allegations," but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." <u>Id.</u> Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Additionally, under Federal Rule of Civil Procedure 9(b), claims sounding in fraud are subject to a heightened pleading requirement. Under this standard, plaintiffs must

6

"allege facts that give rise to a strong inference of fraudulent intent." Cohen v. Cohen, __ F. Supp. 2d __, 2011 WL 1157283, at *7 (S.D.N.Y. Mar. 29, 2011) (quoting Moore v. PaineWebber, Inc., 189 F.3d 165, 173 (2d Cir. 1999)).

A. Breach of Contract

Plaintiffs' claim that Defendant breached the Dealer Agreement by unreasonably withholding consent rests essentially on arguments that Defendant's considering the Proposed Dealers' CSI scores in determining whether to bless the proposed sales was either (1) per se unreasonable or (2) a pretext for an unspecified ulterior motive. Either way, Plaintiff's allegations do not set forth a plausible claim for relief.

On the first point, the Court rejects Plaintiffs' bald assertions that a CSI rating is not an acceptable reason to withhold consent. Customer goodwill is critical to any business, and it is logical for Defendant to be concerned about its dealers' ability to satisfy their customers. See Colonial Imports Corp. v. Volvo Cars of N. Am., Inc., No. 98-CV-0342, 2001 WL 274808, at *6 (D.N.H. 2001); see also Bill Call Ford, Inc. v. Ford Motor Co., 48 F.3d 201, 203, 206 (6th Cir. 1995) (affirming summary judgment after concluding that conditioning a dealer's right to transfer on an applicant's "meeting satisfactory levels of customer satisfaction" was not

7

unreasonable in light of dealer's previous unsatisfactory performance); Ford Motor Co. v. W. Seneca Ford, Inc., No. 91-CV-0784, 1996 WL 685723, at *5 (W.D.N.Y. 1996) (Under New York's Franchised Motor Vehicle Dealer Act, "Ford was also justified in terminating West Seneca for its failure to achieve a sufficient level of customer satisfaction and service."); In re Van Ness Auto Plaza, Inc., 120 B.R. 545, 550 (Bankr. N.D. Cal. 1990) ("It is not beyond the realm of reasonable decisions for a manufacturer of luxury cars to refuse to accept a dealer with CSI rankings that are average at best and possibly well-below average."). This is particularly true because car dealers are often the face of a manufacturer, responsible for the ongoing integrity of the brand. Plaintiffs' argument that "neither the Dealer Agreement nor applicable law permitted" Defendant to use CSI ratings to withhold consent borders on sophistry (Pls. Opp. 4); the Dealer Agreement's list of grounds for withholding consent is plainly non-exhaustive. (Chiappa Decl., Ex. 1, Dealer Agreement Sec. VI ("DEALER agrees that factors which would make DISTRIBUTOR's withholding of consent reasonable would include, without limitation, . . .) (emphasis added).) Of course, by holding here that Plaintiffs have not stated a claim, the Court does not suggest that Defendant's refusal to consent was per se reasonable. Rather, the Complaint falls short here

8

because Iqbal demands more than conclusory allegations that Defendant acted unreasonably. 129 S. Ct. at 1951 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.")

On the second point, Plaintiffs' suggestion that Defendant's reliance on CSI ratings was merely a pretext for refusing consent to the Group 1 and Lia sales suffers from the same deficiencies discussed already. To survive a motion to dismiss, Plaintiffs must state the facts on which their accusation is founded. Id. ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

B. Breach of Covenant of Good Faith and Fair Dealing

Plaintiffs' claim that Defendant breached the implied covenant of good faith and fair dealing is duplicative of their breach of contract claim and must be dismissed. Plaintiffs' argument that this claim is merely an alternative theory of their case is unavailing; the claims are not "in the alternative" when they are based on the exact same allegations. See, e.g., Bradbury v. PTN Pub. Co., Inc., No. 93-CV-5521, 1998 WL 386485, at *8 (E.D.N.Y. 1998). Rather, as Defendant notes, Plaintiffs' claims are redundant and the implied covenant claim

9

must fail. This is true even though the Court has already dismissed the breach of contract claim. See Odingo v. Allstate Ins. Co., 251 A.D.2d 81, 672 N.Y.S.2d 727, 1998 N.Y. Slip Op. 05416 (1st Dep't 1998) (dismissing implied covenant claim as duplicative when breach of contract claim was also dismissed).

Plaintiffs argue that the "bad faith nature" of Defendant's conduct sets their implied covenant claim apart from their breach of contract claim. For the reasons mentioned already in its discussion of Plaintiffs' pretext allegations, the Court agrees with the Defendant that Plaintiffs have not satisfactory alleged "bad faith." See supra at 5.

    C. <u>Tortious Interference with Contract and Tortious Interference with Prospective Economic Advantage</u>

Counts III and IV of the Complaint allege tortious interference with contract and tortious interference with a prospective economic advantage, respectively. Claims for tortious interference with a contract fail where, as here, the Defendant is accused simply of exercising its right not to approve the proposed transactions. See Tri-County Motors, Inc. v. Am. Suzuki Motor Corp., 494 F. Supp. 2d 161, 175 (E.D.N.Y. 2007) (manufacturer "can incur no liability for tortious interference by simply exercising its right to not approve the sale transaction" between seller of a franchise and a

prospective seller). To the extent Plaintiffs' claim for tortious interference of <u>prospective</u> economic advantage can be construed as one for tortious interference of a prospective contract, this claim fails because Plaintiffs have not alleged conduct on the level of a "crime or independent tort." <u>Carvel Corp. v. Noonan</u>, 3 N.Y.3d 182, 190, 818 N.E.2d 1100, 785 N.Y.S.2d 359 (2004).

   D. <u>Negligence</u>

Plaintiffs' negligence claim must be dismissed because it is wholly premised on a contractual duty. (<u>See</u> Compl. ¶ 74.) "Merely charging a breach of a 'duty of due care', employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim." <u>Clark-Fitzpatrick, Inc. v. Long Island R. Co.</u>, 70 N.Y.2d 382, 390, 521 N.Y.S.2d 653 (1987).

   E. <u>Fraud</u>

Plaintiffs' fraud claim must be dismissed because their allegations fall far short of the heightened pleading standard required by Federal Rule of Civil Procedure 9(b). FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Plaintiffs apparently believe that Defendant fraudulently concealed the reasons for its refusal to consent to

the Group 1 and Lia sales. (See Pl. Opp. 12.) Among other shortcomings, Plaintiffs do not identify the representatives of Defendant responsible for conveying Defendants' refusal to Plaintiffs. See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 216 (S.D.N.Y. 2007). Even if they had, the Court highly doubts that these allegations would have amounted to a plausible claim for relief.

F. New York's Franchised Motor Vehicle Dealer Act

Plaintiffs assert claims under two sections of the Dealer Act: Section 463(2)(k) and Section 466.

1. Plaintiffs' Section 463 Claim is Time-Barred

As is relevant here, Section 463(2)(k) makes it unlawful for a manufacturer to "unreasonably withhold consent to the sale or transfer" of a franchised dealership and requires a manufacturer who refuses consent to provide specific reasons for its decision within sixty days of the franchise's request for consent. This provision has a 120-day statute of limitations, which provides that "[u]pon receipt of notice and reasons for the franchisor's withholding of consent, the franchised motor vehicle dealer may within one hundred twenty days have a review of the manufacturer's decision . . . ." N.Y. V.T.L. § 463(2)(k). Defendant argues that Plaintiffs' claim is time-barred, and Plaintiffs counter that the limitations period has not yet run

12

because Defendant has never provided specific reasons for its refusal to consent to the Group 1 and Lia sales (Pls. Opp. 14).

Plaintiffs' Section 463 claims are time-barred. As to the Group 1 sale, the Complaint is plain that Defendant refused to consent "on the purported basis that Group 1 had an unsatisfactory consumer satisfaction index ("CSI") rating." (Compl. ¶ 20.) Plaintiffs do not specify the date, but the only reasonable inference is that it was on or before January 25, 2007, the date on which Plaintiffs signed a letter of intent with Lia, the next prospective buyer. (Id. ¶ 24.) Plaintiff filed this action on June 25, 2010, well after the 120-day limitations period had expired.

As to the Lia sale, the Complaint states that "[a]lthough [Defendant] did not formally respond to" Plaintiffs' request for consent, Defendant's representative "advised Lia that he should withdraw his application on the basis of an unsatisfactory CSI rating." (Id. ¶ 30.) No date is given, but it was presumably on or before July 24, 2007, the date on which Plaintiffs squashed the anticipated sale. (Id. 32.) The Complaint suggests that Defendant provided its notice and reasons to Lia and not to Plaintiffs, but the only reasonable inference from Plaintiffs' allegations is that Lia relayed this information to them, in turn causing Plaintiffs to send the July

13

24 letter ending the transaction. Section 463 does not specify the manner or content of the notice and reasons, however, and the Court is not aware of cases holding that the limitations period is not triggered by Plaintiffs' alleged facts. Accordingly, as with the Group 1 sale, Plaintiffs' Section 463 claim arising out of the Lia sale was filed too late.

### 2. Plaintiffs' Section 466 Claim is Dismissed

Plaintiffs' Section 466 claim is insufficiently pled and must be dismissed. Before turning to the adequacy of Plaintiffs' allegations, however, the Court resolves the parties' disagreement as to this section's limitations period because this issue will likely arise if Plaintiffs amend their Complaint. Section 466 is silent as to its statute of limitations. Defendant claims the proper period is 120 days or, in the alternative, three years and Plaintiffs argue it is six years. The Court concludes that the proper period is three years based on New York Civil Practice Law and Rules Section 214(2), which provides that actions "to recover upon a liability . . . created or imposed by statute" must be commenced within three years. N.Y. C.P.L.R. 214(2); see Gaidon v. Guardian Life Ins. Co. of Am., 96 N.Y.2d 201, 208, 750 N.E.2d 1078, 1082, 727 N.Y.S.2d 30, 34 (2001). Amorosi v. South Colonie Independent School District, cited by Defendant in support of its 120-day

14

argument, is inapplicable. 9 N.Y.3d 367, 880 N.E.2d 6, 849 N.Y.S.2d 485 (2007). That case concluded simply that the New York Education Law's one-year limitation period for actions against school districts trumped the three-year limitations period otherwise applicable to discrimination claims. In that case, the court concluded that the unambiguous text of the Education Law provision made it applicable to discrimination claims. 9 N.Y.3d at 373. That case did not consider a statute that is silent as to its limitations period and it does not, contrary to Defendant's claim, stand for the idea that "[w]here a specific (and shorter) limitations period exists for a specific type of action" the shorter period automatically applies." (Def. Br. 19.) Plaintiffs' six-year argument is also unpersuasive. New York's C.P.L.R. Section 214(2) applies to most statutory causes of action. See Gaidon, 96 N.Y.2d at 208. Section 466 is not, contrary to Plaintiffs' claim, a cause of action "for which no limitation is specifically prescribed by law." N.Y. C.P.L.R. 213(1).

The proper limitations period may be relevant to an Amended Complaint. In the meantime, the Court dismisses Plaintiffs' Section 466 allegations for failure to state a plausible claim. Section 466(1) provides:

> It shall be unlawful for a franchisor

> directly or indirectly to impose
> unreasonable restrictions on the franchised
> motor vehicle dealer relative to transfer,
> sale, right to renew or termination of a
> franchise, discipline, noncompetition
> covenants, site-control (whether by
> sublease, collateral pledge of lease or
> otherwise), right of first refusal to
> purchase, option to purchase, compliance
> with subjective standards and assertion of
> legal or equitable rights with respect to
> its franchise or dealership.

Thus the harm sought to be remedied by this provision is "unreasonable restrictions" on a dealer's right to, among other things, transfer, sell or renew its franchise.[2] Plaintiffs' case is essentially that Defendant imposed unreasonable restrictions on their ability to transfer Sunrise by withholding its consent to the Group 1 and Lia sales on the basis of low CSI ratings. As discussed already, imposing a CSI threshold is not a per se unreasonable restriction on a dealer's right to transfer his franchise and, without more, Plaintiffs' allegations do not state a claim for relief. In so ruling, the Court discounts Plaintiffs' allegations of pretext because, as discussed above, they are too conclusory to be credited.

---

[2] Section 466(2) provides that a restriction that prevents a dealer from obtaining the fair value of its franchise will be deemed unreasonable. To the extent Plaintiffs rely on this provision, their claim fails because they have not alleged a plausible claim that Defendant tried to prevent them from obtaining fair value for Sunrise or that the price they eventually obtained from LSI was not fair value.

G. <u>Federal Dealers' Day in Court Act</u>

Plaintiffs also assert a claim under the Day in Court Act. Specifically, they claim that Defendant violated Section 1222 of that act, which provides in part that:

> An automobile dealer may bring suit against any automobile manufacturer . . . by reason of the failure of said automobile manufacturer . . . to act in good faith in performing or complying with any of the terms or provisions of the franchise. . . .

"Good faith" is defined under the Day in Court Act as:

> the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party. . . .

15. U.S.C. § 1221(e).

Plaintiffs argue that Defendant's refusal to consent to the Group 1 and Lia sales constitutes a lack of good faith. The Court disagrees. As used in the Day in Court Act, good faith "has a narrow, restricted meaning." <u>Empire Volkswagen Inc. v. World-Wide Volkswagen Corp</u>. 814 F.2d 90, 95 (2d Cir. 1987). To prevail, a "dealer must demonstrate that the manufacturer exercised coercion or intimidation or made threats against the dealer to achieve an improper or wrongful objective." <u>Id.</u> (citations omitted). Here, Plaintiffs have not

17

alleged coercive, intimidating or threatening conduct on Defendant's part.

## II. Amending the Complaint

In their opposition, Plaintiffs requested leave to amend the Complaint. Leave to amend should be freely given, see, e.g., Alexandre v. Town of Hempstead, __ F.R.D. __, 2011 WL 2181461, at *4 (E.D.N.Y. Jun. 4, 2011), and subject to the following rulings, Plaintiffs may amend their Complaint within thirty days of this Order.

Gray and Auto Partners are not signatories to the Dealer Agreement and therefore do not have standing to bring claims for breach of contract or breach of the implied covenant of good faith and fair dealing. Plaintiffs implore the Court to infer their third-party beneficiary status under the Dealer Agreement, but the contract's plain language belies any intent to confer a benefit on Gray or Auto Partners. "A third-party beneficiary exists, however, only if the parties to that contract intended to confer a benefit on him when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to him." McPheeters v. McGinn, Smith & Co., Inc., 953 F.2d 771, 773 (2d Cir. 1992) (citations and internal quotations omitted). Here, the Dealer Agreement's "Standard Provisions"--which are incorporated into the Dealer

18

Agreement--contain a "no third-party provisions" clause (Chiappa Decl., Ex. 2, Standard Provisions Art. XXVI.I), and Plaintiffs have not pointed to anything to overcome the text of that clause.

Gray and Auto Partners also may not assert claims under the MVA Act because they are not "franchised motor vehicle dealers." See N.Y. V.T.L. § 469; see also id. § 462 (defining "franchise motor vehicle dealer"). Bevilacque v. Ford Motor Co., cited by Plaintiffs, is not to the contrary. There, although the court permitted a dealer's minority shareholder to remain in the case, the defendants in that case had not moved to dismiss the shareholder. 125 A.D.2d 516, 520, 509 N.Y.S.2d 595, 600 (2d Dep't 1986).

Likewise, Gray and Auto Partners may not assert claims under the Day in Court Act. See Vincel v. White Motor Corp., 521 F.2d 1113, 1120 (2d Cir. 1975) ("When, as here, a dealership is doing business in corporate form, the statute contains no hint that it intends a departure from the established principle that the locus of the right of action is the corporation."); Bronx Chrysler Plymouth, Inc. v. Chrysler Corp., 212 F. Supp. 2d 233, 243 (S.D.N.Y. 2002)

Defendant also argues that Gray and Auto Partners do not have standing to assert negligence and fraud claims. (Def.

Br. 21.) The Court refrains from considering these issues here. It will address them, if appropriate, if Defendant raises them in response to an Amended Complaint.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiffs may file an Amended Complaint, in accordance with the rulings in this Order, within thirty (30) days of the date of this Order.

SO ORDERED.

/s/ JOANNA SEYBERT  
Joanna Seybert, U.S.D.J.

Dated: August  25 , 2011  
Central Islip, New York